UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/22/2016
```

-------------------------------------------------------------------X
                        :

MAURICE BLALOCK,                 :

                     :

                Plaintiff,      :           13-CV-8332 (JMF)

                     :

        -v-                :       OPINION AND ORDER

                     :

CATHERINE M. JACOBSEN, et al.,  :

                     :

             Defendants.     :

                     :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Maurice Blalock, a New York State prisoner proceeding *pro se*, brings this

action pursuant to Title 42, United States Code, Section 1983 and the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), Title 42, United States Code, Section

2000cc, *et seq.*, alleging violations of his constitutional and statutory rights while incarcerated,

including infringement of his right to free exercise of religion and violation of his due process

rights.  The Court previously dismissed some of Blalock's claims (*see* Docket No. 51) and

transferred others to the Northern District of New York (*see* Docket Nos. 8, 12).  The remaining

claims pending here are his free exercise claims against Defendant Catherine M. Jacobsen and

his due process claims against Defendants Nicole Huttel, Mark Royce, Angelene Stevenson, and

Natasha Trembath.  The Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, for summary judgment on all of Blalock's remaining claims.  (*See* Docket No. 88).

For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The background to this proceeding is laid out in the Court's October 20, 2014 Opinion and Order, familiarity with which is presumed. *See Blalock v. Jacobsen*, No. 13-CV-8832 (JMF), 2014 WL 5324326, at *1-2 (S.D.N.Y. Oct. 20, 2014). The following facts, however, are taken from the Complaint as well as the parties' declarations and statements pursuant to Local Rule 56.1, and are viewed "in the light most favorable" to Plaintiff, as the non-moving party. *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004).

**A. Facts Underlying the Free Exercise Claim**

Blalock is a New York State prisoner who was housed at the Green Haven Correction Facility during the time period relevant to this motion. (Compl. (Docket No. 2) ¶ 31). As an orthodox Muslim, Blalock wears his state-issued pants hemmed above his ankles, to comply with a Muslim religious edict that instructs Muslim men that wearing longer pants is an act of "conceit." (Compl., Ex. 2; *id.* ¶ 42). New York State Department of Corrections and Community Supervision ("DOCCS") uses Directive 3081 to govern inmate clothing. (*See* Defs.' Mem. Law Supp. Mot. Summ. J. (Docket No. 98) ("Defs.' Mem.") 3). On September 26, 2011, Defendant Jacobsen — who was the DOCCS Acting Deputy Commissioner of Program Services at the time — issued a memorandum (the "September Memorandum") stating that Directive 3081 did not permit Muslim inmates to hem or roll their pants, except during religious services, because of security concerns. (*See* Compl. ¶ 41; Pl.'s Resp. Defs.' Rule 56.1 Statement (Docket No. 116) ("Pl.'s 56.1 Statement") ¶ 1; Decl. Catherine Jacobsen (Docket No 94) ("Jacobsen Decl."), Ex. A). Following complaints from Muslim clergy and inmates, including Blalock, Directive 3081 was amended on January 5, 2012, and again on January 25, 2012 — neither time by Jacobsen — and now allows inmates to have their pants hemmed "to reach the top of the

ankle bone." (*See* Decl. Gayle Haponik (Docket No. 97) ("Haponik Decl."), Exs. A, B; Defs.'

Statement Pursuant Local R. 56.1 (Docket No. 91) ("Defs.' 56.1 Statement") ¶ 8; Pl.'s Response

Defs.' Mem. Law Supp. Mot. Summ. J. (Docket No. 117) ("Pl.'s Mem.") 21).

## B.  Facts Underlying the Due Process Claim

On May 30, 2012, Blalock was selected at random for a urinalysis.  (*See* Compl. ¶ 82).

The urinalysis was positive for marijuana use, despite the fact that Blalock, a former crack

cocaine user, claims to have been sober since 1997.  (*See* Compl. ¶ 87; Decl. Mark Royce

(Docket No. 93) ("Royce Decl.") ¶ 3).  Blalock was charged with violating Green Haven's drug

use policy, and a disciplinary hearing was held.  (*See* Compl. ¶ 87; Royce Decl. ¶ 3).  Defendant

Stevenson was assigned to Blalock as his hearing assistant; through Stevenson, Blalock

requested access to certain documentation from Fishkill Correctional Facility ("Fishkill"), where

the urinalysis had been performed by Defendant Trembath, including a copy of the urinalysis

machine user manual.  (*See* Compl. ¶ 97; *id.*, Ex. 13; Pl.'s 56.1 Statement ¶¶ 14, 22).  Defendant

Huttel, Stevenson's supervisor, denied the request for the Fishkill documents.  (*See* Pl.'s 56.1

Statement ¶¶ 16-17; Royce Decl., Ex. D).  The hearing, with Defendant Royce as the hearing

officer, took place on June 25, 2012.  At the conclusion of the hearing, Royce found Blalock

guilty of violating the facility's drug use policy, and sentenced him to twenty-four days of pre-

hearing keeplock confinement; sixty-six days of special housing unit ("SHU") confinement; and

ninety days' loss of telephone, commissary, and packages privileges.  (*See* Compl. ¶ 100; *id.* Ex.

17, at 26).  Blalock appealed the decision to the New York State Supreme Court, which reversed

the disciplinary determination in April 2013 on the ground that Blalock had not been provided a

copy of the urinalysis machine user manual to assist in his defense.  (*See* Decl. Jeb Harben

(Docket No. 92) ("Harben Decl."), Ex. A).

**C.  Procedural History**

Blalock commenced this action on November 20, 2013, naming defendants from Green Haven and defendants from Clinton.  On December 30, 2013, the Court issued an Order asking Blalock to show cause why his claims against the defendants from Clinton should not be severed from this action under Rule 21 of the Federal Rules of Civil Procedure and transferred to the Northern District of New York pursuant to Title 28, United States Code, Section 1404(a). (Docket No. 8).  After receiving Blalock's response (Docket No. 9), the Court did sever Blalock's claims arising out of events that occurred at Clinton, and transferred those claims to the Northern District of New York (Docket No. 12), where they are now pending.[1]  On March 18, 2014, all Defendants who had been served other than Jacobsen filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6).  (Docket No. 24).  The Court granted that motion, except with respect to Blalock's due process claims against Huttel, Royce, Stevenson, and Trembath. (*See* Docket No. 51).  On May 6, 2014, Jacobsen filed her Answer to the Complaint (Docket No. 41), and Huttel, Royce, Stevenson, and Trembath were subsequently served with the Complaint and filed Answers as well (Docket Nos. 56, 67).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton*, 373

---

[1]     On January 8, 2016, Blalock filed a letter in the Northern District of New York purporting to withdraw his claims in that Court.  (*See* Letter Motion, *Blalock v. Fischer, et al.*, No. 14-CV-0052 (GLS) (DEP) (N.D.N.Y. Jan 8, 2016), Docket No. 46).  The case, however, remains open as of today.

F.3d at 89, and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  Here, because Defendant is proceeding *pro se*, the Court must grant him "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010).  Such special solicitude is not unlimited, however.  Provided the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, a *pro se* party opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey,* No. 07-CV-7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

### FREE EXERCISE CLAIMS

The Court begins with Blalock's free exercise claims against Jacobsen, which arise primarily out of her September Memorandum concerning pants length.  The Court first addresses Blalock's claims for money damages and then turns to his claims for injunctive relief.

**A.  Claims for Damages**

Blalock concedes (*see* Pl.'s Mem. 35), as he must, that any claim for damages arises under Section 1983, not RLUIPA.  *See, e.g.*, *Sossamon v. Texas*, 563 U.S. 277, 290-91 (2011); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013).  Pursuant to Section 1983, he alleges that Jacobsen violated his constitutional rights under the Free Exercise Clause of the First Amendment by restricting his ability to wear his pants hemmed in accordance with his religious beliefs and that he is entitled as a result to monetary relief.  In order to bring such a claim, Blalock "must show at the threshold that the disputed conduct substantially burdens his sincerely held beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006).[2]  Once a plaintiff makes such a showing, the defendants "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Id.* at 275.  As with all Section 1983 claims, Blalock must also establish that each Defendant against whom he brings the claim was personally involved in any unconstitutional conduct.  *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).  Finally, to prevail, Blalock must overcome Jacobsen's defense that she is entitled to qualified immunity.  (*See* Defs.' Mem. 6-10).

Blalock alleges that the September Memorandum substantially burdened his right to free exercise by preventing him from wearing pants hemmed above the ankle at all times.  (*See* Compl. ¶¶ 47, 51; Pl.'s Mem. 9).  He further alleges that Directive 3081, as currently written, continues to substantially burden his rights "because it has created a height of contention that did not exist prior to it and is being applied discriminatively."  (Pl.'s Mem. 5; *see id.* 21, 30).  For

---

[2]      The Second Circuit recently noted that it has not ruled on whether the substantial burden test continues to be the relevant test, given that it "embroils courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quoting *Ford v. McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003)).  As none of the parties here raises the issue, however, this Court applies the test to Blalock's claims.

purposes of this motion, the Court assumes, as Defendants do (*see* Defs.' Mem. 5), that having to wear pants below the ankles from September 2011 until January 2012 substantially burdened Blalock's right to free exercise and that the alleged instances of harassment that Blalock faced after the policy permitting shortened pants was reinstated did the same.  *See Williams v. Leonard*, No. 11-CV-1158 (TJM), 2013 WL 5466191, at *2 (N.D.N.Y. Sept. 30, 2013) (holding that the plaintiff had "pleaded legally plausible First Amendment and RLUIPA claims related to pants length").  Blalock's claims nevertheless fail because, first, Jacobsen is entitled to qualified immunity from any claim with respect to the September Memorandum and, second, because Blalock fails to show that Jacobsen has had any personal involvement in the continuing application of Directive 3081.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (making clear that a court may, in its own discretion, refrain from determining whether a constitutional right has been violated and move directly to the question of qualified immunity); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is . . . a prerequisite to [her] liability on a claim for damages . . . .").

Qualified immunity shields government officials from civil suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In order to be "clearly established," a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (brackets and internal quotation marks omitted).  Further, the court's determination of whether the right at issue is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *DiStiso v. Cook*, 691 F.3d 226, 229 (2d Cir. 2012) (internal quotation marks omitted); *see also Ashcroft v. al-Kidd*, 131 S.

Ct. 2074, 2084 (2011) (emphasizing that clearly established law should not be defined at "a high level of generality").  The purpose of these standards is to protect government officials from "the risks of trial — distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service" — and to avoid "disrupti[on] of effective government" through "broad-ranging discovery."  *Harlow*, 457 U.S. at 816-17.

Applying the foregoing standards here, Jacobsen is plainly entitled to qualified immunity for issuing the September Memorandum.  As this Court noted in ruling on the prior motion to dismiss, "neither the Supreme Court nor the Second Circuit has ever ruled that a prisoner's right to free exercise encompasses the right to wear pants at any particular length."  *Blalock*, 2014 WL 5324326, at *8; *cf. Lynch v. Ackley*, — F.3d —, 2016 WL 335928, at *5 (2d Cir. 2016) (holding that qualified immunity applies unless "the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit").  Furthermore, Jacobsen testified that she believed she was acting in accordance with official DOCCS policy when she issued the September Memorandum to clarify that Directive 3081 did not permit inmates to roll or hem their pants generally, but allowed Muslim inmates to roll or cuff their hems during religious services.  (*See* Jacobsen Decl. ¶¶ 6-8).  As Blalock correctly points out, that was not in fact the case — inmates had been permitted to hem or roll their pants at other times prior to September 2011.  (*See* Pl.'s Mem. 16, 24).  Blalock has offered no evidence, however, to contradict Jacobsen's testimony that she was not aware of these exceptions at the time she issued the September Memorandum.  (*See* Jacobsen Decl. ¶ 10).

Nor has Blalock offered any evidence — conclusory assertions of pretext and discrimination aside (*see, e.g.*, Pl.'s Mem. 16, 24, 27) — that a reasonable officer in Jacobsen's position would have thought her actions to be in violation of established law despite the stated

penological concerns with clothing alterations (*see* Jacobsen Decl. ¶¶ 5-6, 9, 13).  Notably, in *Williams*, the case on which Blalock primarily relies, the Court found that the defendants were not entitled to qualified immunity on a motion to dismiss because they had offered no legitimate penological reasons to justify the policy requiring below-ankles pants.  *See Williams*, 2013 WL 5466191, at *4.  Here, by contrast, Defendants have offered penological explanations for the policy prohibiting inmate alteration of standard-issue pants: that they could be used to conceal contraband or to signify membership in a gang.  (*See* Jacobsen Decl. ¶¶ 5-6; Haponik Decl. ¶¶ 7-8, 12-15).  In light of those reasons (which are certainly not facially illegitimate or irrational), and Jacobsen's good-faith beliefs about DOCCS policy, it was objectively reasonable for Jacobsen to believe that she was "acting in a fashion that did not violate a clearly established right."  *Salahuddin*, 467 F.3d at 273 (internal quotation marks omitted).  Accordingly, Plaintiff's claims for money damages with respect to Jacobsen's role in issuing the September Memorandum must be and are dismissed on the ground of qualified immunity.

Plaintiff's claims for money damages relating to Directive 3081, as amended on January 25, 2012, fail for a more fundamental reason: because there is no evidence (or even allegation) that Jacobsen was involved in amending Directive 3081 or interpreting and applying the policy after she issued the September Memorandum.  Jacobsen was Acting Deputy Commissioner for Program Services in September 2011, but is now the Superintendent of Wallkill Correctional Facility ("Wallkill").  (*See* Jacobsen Decl. ¶¶ 2-3).  She was not responsible for the January 2012 amendments to Directive 3081, and does not appear to have (or have had) any responsibility for writing or enforcing the policy (except, presumably, in her capacity as Wallkill Superintendent, but that would not have had any bearing on Blalock).  (*See* Defs.' Mem. 13-14; Haponick Decl. ¶¶ 4-5).  Thus, Jacobsen is also entitled to summary judgment on any claim with respect to the

current version of Directive 3081.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Gaston*, 249 F.3d at 164.

## B.  Claims for Injunctive Relief

Blalock also seeks injunctive relief.[3]  Specifically, he asks that the January 25, 2012 amendment of Directive 3081 be rescinded, and the January 5, 2012 version restored.  (*See* Compl. ¶ VI(1); Pl.'s 56.1 Statement ¶ 12; Pl.'s Mem. 21, 30).  That request is moot, however, as Jacobsen — the only Defendant even remotely connected to the pants-length policy — is, as noted, now Superintendent of Wallkill and no longer involved with, or responsible for, Directive 3081.  Thus, there is no Defendant named in this case who could be a proper object of any injunctive relief.  *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 148 (D. Conn. 2011); *Bd. of Elections of City of N.Y. v. Lomenzo*, 365 F. Supp. 50, 53 (S.D.N.Y. 1973).

More fundamentally, Blalock provides no evidence showing that Directive 3081, as currently written, substantially burdens his right to free exercise of religion.  The current version of Directive 3081 provides that pants, if altered, must "reach the top of the ankle bone." (*Compare* Haponik Decl., Ex. A, § IV(F), *with* Haponik Decl., Ex. B, § IV(F)).  While Blalock contends that, according to his religious beliefs, "the best height is half way between the ankle and knee," he does not suggest that the limit set forth in the Directive violates his religious beliefs.  (Pl.'s 56.1 Statement ¶ 12).  Indeed, before the September Memorandum, Blalock's hems were tailored only one-and-a-half to two inches above the ankle — a length that he himself admits was "in compliance with Islamic law."  (*Id.* ¶ 2).  That is, while Blalock may prefer to

---

[3]     In its prior Opinion and Order, the Court deferred the question of whether Blalock's claims for injunctive relief were moot in light of his transfer to Clinton because Jacobsen was the only Defendant to whom injunctive relief could be addressed and she had not moved to dismiss. *See Blalock*, 2014 WL 5324326, at *3 n.2.  Now that Jacobsen moves for summary judgment, Blalock's claims for injunctive relief must be addressed.

have his pants hemmed higher, he has offered no evidence that his religion requires him to do so. *Cf. Leach v. New York City*, No. 12-CV-3809 (PAC) (JCF), 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) (holding that a prisoner failed to state a valid free exercise claim where he alleged only *de minimis* impositions on his religious beliefs).

In fact, Blalock's real complaint with respect to the current version of Directive 3081 is that "it has created a height of contention that did not exist prior to it and is being applied discriminatively." (Pl.'s Mem. 5). To the extent that the existing policy is being misapplied, however, Blalock's remedy would not be against Jacobsen, let alone rescission or amendment of the policy; instead, it would be either money damages from the officers misapplying the policy (presumably, officers at Clinton, in the Northern District of New York) or injunctive relief requiring the officers enforcing the policy to adhere to its terms. In other words, Blalock's beef is not with the policy as written or with Jacobsen; instead, it is with the policy as enforced and with those who are doing the enforcing. Thus, Blalock is plainly not entitled to any injunctive relief from this Court, and all claims against Jacobsen must be and are dismissed.

## DUE PROCESS CLAIMS

Blalock alleges that the remaining defendants — Huttel, Royce, Stevenson, and Trembath — violated his due process rights when he was sentenced to sixty-six days of SHU confinement and twenty-four days of pre-hearing keeplock after a disciplinary hearing in which Huttel denied him access to certain documentation to aid in his defense. (*See* Compl. ¶¶ 97, 100; Pl.'s Mem. 35-45). To satisfy constitutional due process requirements, a prison disciplinary proceeding must include: (1) advanced written notice of the alleged violation; (2) the opportunity for the inmate to call witnesses and present documentary evidence in his defense; (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action; and (4)

some evidence in support of the decision.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454-55; *Gaston*, 249 F.3d at 163; *Smith v. Menifee*, No. 02-CV-7630 (LBS), 2003 WL 1872668, at *2 (S.D.N.Y. Apr. 10, 2003).  Before bringing a due process claim, however, a plaintiff must first establish that the challenged action infringed a constitutionally protected property or liberty interest.  *See, e.g.*, *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001).  A prison disciplinary proceeding implicates such an interest only if it "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)); *see also Blalock*, 2014 WL 5324326, at *5.

        In this case, the Court need not decide whether Blalock's property or liberty interests were infringed, because his claims fail for other reasons.  Blalock contends first that Huttel violated his due process rights by denying his request for certain documents — namely, the authorization form directing the sample to be tested at Fishkill, the log book from Fishkill, and the instruction manual for the urinalysis machine.  (*See* Compl. ¶¶ 90, VI(12); Blalock Decl. ¶ 17; Pl.'s Mem. 41).  Blalock's arguments with respect to two documents are easily rejected, as there is no evidence that there was ever a written authorization and the only log books relevant to the urinalysis were those from Green Haven, which were provided to him.  (*See* Royce Decl., Ex. D, at 16; *id.*, Ex. E ("Hearing Tr.") 9-10).  Blalock's arguments with respect to the urinalysis user manual have more force, if only because the New York Supreme Court agreed, in light of *Marshall v. Fischer*, 958 N.Y.S.2d 800 (2d Dep't 2013), which was decided after the disciplinary hearing in this case, that Blalock was entitled to the manual for purposes of his defense.  (*See* Harben Decl., Ex. A).  When Huttel denied Blalock's request, however, DOCCS policy provided that Blalock was not entitled to it and New York courts had approved that policy; in fact, most

state courts adhere to that view even today.  *See, e.g.*, *Jones v. Venettozzi*, 979 N.Y.S.2d 718, 719 (3d Dep't 2014); *Anderson v. Prack*, 975 N.Y.S.2d 706, 706 (3d Dep't 2013).  Notably, the New York Supreme Court, in a subsequent order denying Blalock fees and costs for his Article 78 appeal, observed that the denial of the user manual, although a violation of due process, was "substantially justified" in light of the case law at the time.  (Harben Decl., Ex. B, at 2).  It follows that Huttel reasonably believed that she was "acting in a fashion that did not violate a clearly established right," *Salahuddin*, 467 F.3d at 273, and that she is entitled to qualified immunity.  (To the extent Plaintiff alleges that Royce and Stevenson were also involved in the failure to provide the manual, they too are entitled to qualified immunity because they were following Huttel's instructions and DOCCS policy.  (*See* Hearing Tr. 7; Royce Decl. ¶ 13; Decl. Angelene Stevenson (Docket No. 95) ("Stevenson Decl.") ¶¶ 5-7)).

Blalock also argues that his due process rights were violated by Royce, because he was biased; by Stevenson, because she provided inadequate assistance and did not obtain the Fishkill documents Blalock requested; and by Trembath, who did not have authorization to test the urine sample at Fishkill or dispose of the sample and whose urinalysis report Blalock maintains showed an erroneous result.  (*See* Pl.'s Mem. 40, 43-45; Compl. ¶¶ VI(5), VI(11), VI(12)). There is no evidence in the record to support any of these contentions.  Trembath testified at the hearing that she was told to test the sample at Fishkill because the Green Haven urinalysis machine was broken and that DOCCS policy is to dispose of urine samples once they have been tested.  (*See* Hearing Tr. 9-10, 21-22).  Neither of these decisions can be said to have violated any due process right, let alone to have done so clearly enough to be unprotected by qualified immunity.  And if the urinalysis test did in fact show a false positive, Trembath would still be entitled to qualified immunity because she followed the procedures mandated by DOCCS for

conducting such tests and she had no reason to think those procedures were unconstitutional. (*See* Hearing Tr. 9-21).  Similarly, Stevenson testified that she acted in accordance with both DOCCS policy and the decision of her superior, Huttel, in not providing Blalock with the requested Fishkill documents.  (*See* Stevenson Decl. ¶¶ 5-7).  Vague allegations of "ineffectiveness" aside, Blalock has no other complaints about Stevenson's assistance, and there is no evidence to suggest that her services deprived Blalock of any constitutional rights.  Finally, Blalock alleges that Royce was "biased" in his capacity as the hearing officer, in light of his failure to consider Trembath's "procedural errors," his disagreement with Blalock's testimony, and the harsh sentence imposed.  (*See* Pl.'s Mem. 45; Compl. ¶ VI(5)).  As noted, however, Trembath appears to have acted in accordance with DOCCS policy and made no such errors.  As hearing officer, Royce was entitled — indeed, required — to judge the credibility of testimony, and the transcript does not suggest that he erred in finding the urinalysis test results more credible than Blalock, and certainly not to a degree that would constitute a violation of Blalock's constitutional rights.  (*See* Hearing Tr. 26-27).  Nor is there any basis to conclude that Blalock's sentence was so unreasonable as to create an inference of bias.  *See, e.g.*, *Fisher v. Dep't of Corr.*, No. 92-CV-6037 (LAP), 1995 WL 608379, at *6 (S.D.N.Y. Oct. 16, 1995) (rejecting a prisoner's allegations of hearing officer bias even though the sentence was "a bit harsh").  Accordingly, these Defendants are also entitled to summary judgment on Blalock's claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in all respects, and the Complaint is dismissed against all Defendants.[4]  This Court certifies,

---

[4]     On November 7, 2015, Blalock filed a letter and requested that the Court consider it as a sur-reply.  (*See* Docket No. 122).  The Court has done so.

pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate Docket No. 88, to close this case, and to mail a copy of this Opinion and Order to Blalock.

SO ORDERED.

Date:   February 22, 2016
         New York, New York

JESSE M. FURMAN
United States District Judge